# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Maria Calvillo, | Case No.: 2:19-cv-00279-JAD-BNW |
| Plaintiff | **Order (1) Granting in Part Motion to Dismiss, (2) Denying Motion to Stay Discovery, (3) Denying as Moot Motion for Protective Order, and (4) Granting Motion for Leave to Submit Supplemental Authority** |
| v. | |
| Experian Information Solutions, Inc., | |
| Defendant | [ECF Nos. 12, 18, 19, 45, 46] |

Maria Calvillo sues consumer reporting agency Experian Information Solutions, Inc., claiming that Experian violated its disclosure duties under the Fair Credit Reporting Act (FCRA)[1] and Nevada law.[2] She also claims that Experian violated its duty under the FCRA to reasonably investigate her dispute about the accuracy of information that it furnished in consumer reports on her. Calvillo further contends that Experian failed to use FCRA-mandated reasonable procedures to ensure the maximum accuracy of information that it reported on her and engaged in deceptive trade practices in violation of Nevada law.[3]

Calvillo amended her complaint once as a matter of right after Experian moved to dismiss the claims in her original pleading.[4] Experian now moves to dismiss Calvillo's amended claims with prejudice, arguing that she has not plausibly stated any claim for which she is entitled to

---

[1] 15 U.S.C. §§ 1681 et seq.

[2] *See generally* ECF No. 10 (first-amended complaint).

[3] *Id.*

[4] ECF Nos. 1 (original complaint), 7 (motion to dismiss), 10 (first-amended complaint).

relief and that she failed to plead fraud with the required particularity.[5]  Experian also moves to stay discovery pending a ruling on its dismissal motion and for a protective order to prevent Calvillo from taking any discovery pending my stay decision.[6]  Finally, Calvillo moves to supplement her response to Experian's dismissal motion with new Ninth Circuit authority.[7]

For the reasons discussed below, I grant in part the motion to dismiss, deny the motion to stay discovery, deny as moot the motion for a protective order, and grant the motion to submit supplemental authority without further briefing.  The upshot of my decision on the dismissal motion is that I construe each alleged violation as its own claim for relief, allow Calvillo to proceed on three of her claims, grant her leave to amend five others, and dismiss her remaining five claims with prejudice.

## I.    Motion to dismiss [ECF No. 12]

### A.    Legal standard for dismissal under Rule 12(b)(6)

Federal Rule of Civil Procedure 8 requires every complaint to contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief."[8]  While Rule 8 does not require detailed factual allegations, the properly pled claim must contain enough facts to "state a claim to relief that is plausible on its face."[9]  This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; the facts alleged must raise the claim "above the

---

[5] ECF No. 12.

[6] ECF Nos. 18 (motion to stay discovery), 19 (motion for a protective order).

[7] ECF Nos. 45, 46 (corrected image).  Calvillo does not seek leave to submit further briefing.

[8] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[9] *Twombly*, 550 U.S. at 570.

speculative level."[10]  In other words, a complaint must make direct or inferential allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[11]

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss.  The court must first accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[12]  Mere recitals of a claim's elements, supported by only conclusory statements, are insufficient.[13]  The court must then consider whether the well-pled factual allegations state a plausible claim for relief.[14]  A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[15]  A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[16]

## B.    Factual allegations

I begin by identifying some of the well-pled factual allegations in Calvillo's first-amended complaint that are entitled to the assumption of truthfulness.  Calvillo alleges that she voluntarily filed a petition under Chapter 13 of the Bankruptcy Code on April 20, 2011.[17]  At the

---

[10] *Iqbal*, 556 U.S. at 678.

[11] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)) (emphasis in original).

[12] *Iqbal*, 556 U.S. at 678–79.

[13] *Id.*

[14] *Id.* at 679.

[15] *Id.*

[16] *Twombly*, 550 U.S. at 570.

[17] ECF No. 10 at ¶ 14.

time of her petition, Calvillo owned real property that was subject to a first mortgage deed of trust.[18]  During her bankruptcy, the servicing of that loan was transferred to Nationstar Mortgage.[19]  The bankruptcy court entered an order confirming Calvillo's Chapter 13 plan on October 5, 2011.[20]  Calvillo alleges that, under the terms of the plan, she was required to make ongoing payments on the mortgage serviced by Nationstar and that her payments to Nationstar were current as of her petition date.[21]  She also alleges that the bankruptcy court granted her a discharge on July 15, 2016, after she tendered all of the payments under her Chapter 13 plan.[22]

Calvillo alleges that, on September 1, 2016, Experian provided her a document labeled Report No. 0019-5853-35, which she contends is a FCRA § 1681g consumer disclosure.[23]  She calls this document either the "Experian Consumer Disclosure" or the "Credit File."[24]  I call it the 2016 Document.[25]  Calvillo further alleges that, on March 22, 2017, Experian provided her a document labeled Report No. 4190-5654-63, which she contends is both a § 1681g consumer disclosure and a § 1681i consumer report.[26]  She calls this document the "First Experian Report." I call it the 2017 Document.  Calvillo alleges that she disputed Experian's failure to furnish the positive payment history for her Nationstar account in the 2017 Document on February 27,

---

[18] *Id.* at ¶ 15.

[19] *Id.*

[20] *Id.* at ¶ 16.

[21] *Id.*

[22] *Id.* at ¶ 18.

[23] *Id.* at ¶ 31.

[24] *Id.*

[25] "Report," "disclosure," "consumer's file," and "credit file" are terms of art with defined meanings under the FCRA or its interpretive case law.  By naming the documents that her claims turn with these labels, Calvillo has not charged them with the meanings ascribed to them under the FCRA and case law.  To avoid this confusion, I have eschewed Calvillo's labels.

[26] ECF No. 10 at ¶ 31.

2018.[27]  Finally, Calvillo alleges that, on March 15, 2018, Experian provided her a document that she contends is both a § 1681g consumer disclosure and a § 1681i consumer report and is labeled Report No. 1803-4995-13.[28]  She calls this document either the "Experian Reinvestigation" or the "Second Experian Report."[29]  I call it the 2018 Document.

Experian provides copies of the 2017 and 2018 Documents with its dismissal motion and asks me to consider both in deciding its motion.[30]  Calvillo identifies and repeatedly references the 2017 Document in her first-amended complaint.[31]  She also repeatedly references the 2018 Document in her pleading.[32]  These documents are integral to Calvillo's claims that Experian failed to provide clear and accurate disclosures, failed to take reasonable steps to ensure that the information it reported about her was accurate, and failed to reasonably reinvestigate her dispute. Thus, these documents fall under the doctrine of incorporation by reference, and I may consider them in determining Experian's dismissal motion without converting the motion into one for summary judgment.[33]

### C.    Discussion

Calvillo alleges that Experian violated three different sections of the FCRA (§§ 1681e, 1681g, 1681i) and one provision of Nevada's consumer-reporting scheme (NRS § 598C.130). She also alleges that these violations constitute deceptive trade practices under Nevada law (NRS

---

[27] *Id.* at ¶ 35.

[28] *Id.* at ¶ 31.

[29] *Id.*

[30] ECF Nos. 12-2 (2017 Document), 12-3 (2018 Document).

[31] *See* ECF No. 10 at ¶¶ 31–32, 58–59, 65, 69, 95, 102, 108, 126–27.

[32] *See id.* at ¶¶ 31–32, 58, 60, 101–02, 106, 108, 112, 114, 123, 126–27.

[33] *See U.S. v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

§§ 598.0915(5) and 598.0923(3)) for which she can recover as a fraud victim (NRS § 41.600).

Calvillo lumps all of the alleged violations under three generically pled claims: (1) violation of

the FCRA, (2) violation of NRS § 41.600, and (3) violation of NRS Chapter 598C.[34]  For the

sake of clarity, I refer to each alleged violation as a separate claim for relief,[35] and I begin with

the claims alleging a failure to disclose.

### 1.    *Failure-to-disclose claims under FCRA § 1681g and NRS § 598C.130*

FCRA § 1681g(a) requires a consumer reporting agency to, "upon [the] request" of a

consumer who furnishes proper identification, "clearly and accurately" disclose six categories of

information.[36]  Relevant here are the paragraphs of § 1681g(a) that require a reporting agency to

provide (1) all of the information that is in the consumer's file at the time of her request and

(2) the identity of each person who procured a consumer report for either "employment purposes,

during the 2-year period preceding the date" of the request or "for any other purpose, during the

1-year period preceding the date" of the request.[37]

Nevada Revised Statute (NRS) § 598C.130 similarly requires a reporting agency to

"clearly and accurately disclose to the consumer the nature and substance of the consumer report

in its files [that] relates to him or her at the time of the request, and disclose the names of the

institutional sources of information."[38]  Nevada's statute similarly requires a reporting agency to

provide the consumer a copy of his or her consumer report, if requested, and the name of each

person who received information about the consumer from the reporting agency "[w]ithin the

---

[34] ECF No. 10 at ¶¶ 136–145.

[35] Plaintiff would be wise to follow suit when amending her pleading in this case.

[36] 15 U.S.C. §§ 1681g(a), 1681h(a)(1).

[37] *Id.* at §§ 1681g(a)(1), (3)(A)(ii).

[38] Nev. Rev. Stat. § 598C.130(1).

preceding 2 years for purposes of employment" or "[w]ithin the preceding 6 months for any other purpose."[39]

### a.     Information in the consumer's file

Section 1681g(a)(1) provides that "[e]very consumer reporting agency shall, upon request, . . . clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request" save for full identification numbers and "information concerning credit scores or any other risk scores or predictors relating to the consumer."[40] "A consumer's file includes 'all information on the consumer that is recorded and retained by a [consumer reporting agency] that might be furnished, or has been furnished, in a consumer report on that consumer.'"[41] Calvillo claims that Experian failed to properly disclose six items of information in her file: (1) behavioral data, (2) uses of information that were not permissible under the FCRA, (3) when and why each soft inquiry was made, (4) that her Bank of the West account was "included" in the bankruptcy after the date of her discharge, (5) account-history data for several of her accounts, and (6) positive-payment data for her Nationstar account.

### i.     Behavioral data

Calvillo contends that Experian failed to disclose the behavioral data that it recorded and maintained in her consumer's file.[42] She alleges that Experian "amasses and maintains" consumers' behavioral data, like "household income; purchase, employment, and education

---

[39] *Id.* at §§ 598C.130(1)–(2).

[40] 15 U.S.C. § 1681g(a)(1)(A)–(B).

[41] *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 759 (9th Cir. 2018) (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 711–12 (3d Cir. 2010)).

[42] ECF No. 10 at ¶¶ 119–26. FCRA § 1681a(g) provides that "[t]he term 'file,' when used in connection with information on any consumer, means all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."

history; residence type; and whether the consumer "is a 'dog' or 'cat' person."[43]  She asserts that Experian compiles this information in a "marketing database" called "ConsumerView," which it uses for credit products and services that it sells, like "OmniView," "TrueTouch," and "Collection Advantage."[44]  Cavillo pleads that Experian's attorneys have made inconsistent assertions in other cases to show that it is plausible that information in the ConsumerView database is recorded and retained by this defendant, not some other member of its corporate-family tree.[45]

She alleges that Experian has maintained the ConsumerView database since 1998 and has touted that its "TrueTouch" credit product contains "the 'freshest' data on 'more than 300 million individuals[.]'"[46]  Based on these facts, Calvillo alleges that she is informed and believes that "Experian's TrueTouch database contained information" about her.[47]

Calvillo alleges that "[i]nformation from these behavioral databases can be included on a consumer report" because Experian "sells a suite of services called "collection advantage" that "permit the user to combine data from Experian's File One" and "MetroNet" databases.[48]  She contends that, "[a]ccording to Experian, the MetroNet 'core' database contains 'demographic information from INSOURCE, the nation's largest repository of consumer marketing

---

[43] ECF No. 10 at ¶ 119.

[44] *Id.* at ¶¶ 119–121.

[45] *Id.* at ¶ 119 & n.43.

[46] *Id.* at ¶¶ 119, 121.

[47] *Id.* at ¶ 121.  Referring to TrueTouch as a database appears to be a typo, however, because the online brochure that Calvillo pleads a link to describes it as a "product."  *See* ECF No. 10 at 31, n.48 (citing https://www.experian.com/assets/marketing-services/product-sheets/true-touch.pdf).

[48] *Id.* at ¶ 120.

demographic data.'"[49]  Calvillo later asserts that Experian uses the behavioral data in its File One database to form credit scores.[50]

Experian argues that Calvillo lacks Article III standing to assert this claim because she has speculated, but not shown, that she suffered a concrete injury, i.e., that Experian failed to disclose behavioral data that it collected and maintained about her that it might furnish, or has furnished, in a consumer report on her.[51]  The Ninth Circuit explained the standard for determining constitutional standing at the dismissal stage in *Maya v. Centex Corporation*.[52]  "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party."[53]  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim."[54]

"To survive a motion to dismiss for lack of constitutional standing, [Calvillo] must establish a 'line of causation' between [Experian's] action and [her] alleged harm that is more than 'attenuated.'"[55]  As the Seventh Circuit explained in *Gillespie v. Trans Union Corporation*,

---

[49] *Id.*

[50] *Id.* at ¶ 125.

[51] ECF No. 12 at 19.

[52] *Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011).

[53] *Id.* at 1068 (internal quotation marks omitted) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

[54] *Id.* (internal quotation marks and brackets omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), and *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

[55] *Id.* at 1070 (quoting *Allen v. Wright*, 468 U.S. 737, 757 (1984)).

this "require[s] some showing—aside from the existence of the [disputed item of information] in its file—that [Experian] included similar information in a consumer report in the past or that it plans to do so in the future."[56]

Construing the facts in the light most favorable to Calvillo and drawing all inferences in her favor, I cannot conclude that she has plausibly alleged that Experian has furnished behavioral data in a consumer report or plans to do so in the future. The problem is that Calvillo does not link the ConsumerView database that she alleges contains her behavioral data to any consumer report that Experian prepared on her—or even consumer reports generally. Paragraph 120 of the first-amended complaint appears to be intended to serve as a bridge between ConsumerView on the one hand and consumer reports on the other, but other than the bald speculation that "[i]nformation from these databases can be included on a consumer report[,]"[57] Calvillo alleges no facts to show or allow the reasonable inference that is the case. She instead alleges that Experian sells a suite of services called "collection advantage," which she contends pulls from Experian's MetroNet and File One databases, and that MetroNet pulls from Experian's INSOURCE database. But she doesn't allege that her behavioral data is contained in any of those databases. Nor does she allege facts to plausibly show or allow the reasonable inference that any of those products constitutes a consumer report.[58]

---

[56] *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 909 (7th Cir. 2007) (*Gillespie I*); *c.f. Ramirez v. TransUnion, LLC*, — F.3d —, 2020 WL 946973, at *13–14 (9th Cir. Feb. 27, 2020) (explaining that consumers have a concrete informational interest under the FCRA in "being able to monitor their credit reports and promptly correct inaccuracies").

[57] ECF No. 10 at ¶ 120. The databases alleged here appear to be ConsumerView and the "credit product" called TrueTouch. Calvillo contends that ConsumerView contains information from TrueTouch, and she is informed and believes that TrueTouch contains her "information." *Id.* at 121. Calvillo's allegations about the TrueTouch database suffer from the same infirmities as her allegations about the ConsumerView database.

[58] Calvillo's allegation that "Experian has provided this 'behavioral' data to third parties, either directly or indirectly, who in turn sells [sic] the data to third party credit decision-makers[,]"

These pleading defects require dismissal under Rule 12(b)(1) for lack of constitutional standing and under Rule 12(b)(6) for failing to state a claim upon which relief can be granted. But it is not yet clear to me that these defects cannot be cured by amendment. So I dismiss Calvillo's claim that Experian violated § 1681g(a)(1) by failing to disclose her behavioral data without prejudice and with leave to amend if she can plead true facts to show that Experian has furnished behavioral data in a consumer report or plans to do so in the future.

### ii. *Not-permissible purposes*

Calvillo contends that Experian violated § 1681g(a)(1) when it failed to disclose the fact that information in her consumer's file "would . . . be made available for purposes not permissible under the FCRA . . . ."[59] Calvillo does not allege that any of her information was actually used for impermissible purposes. She speculates that this occurred because Experian generates something called a "Bullseye report," which she contends Experian's expert in another case called "credit information,"[60] and Experian's other expert in a different case confirmed that Experian provides regardless of whether the requestor has a permissible purpose for obtaining it. But in the interrogatory responses from the other case that Calvillo pleads as factual support for this claim,[61] Experian explained that "a Bullseye report only reflects information provided to Experian by the requesting data furnisher. Only an Experian data furnisher that reports data to

---

ECF No. 10 at ¶ 122, is too vague to plausibly state that Experian has furnished behavioral data on consumer reports or intends to do so in the future. Calvillo also links this data to credit-scoring models, *id.* at ¶¶ 124–25, but the FCRA expressly provides that "nothing in . . . paragraph [§1681g(a)(1)] shall be construed to require a consumer reporting agency to disclose to a consumer any information concerning credit scores or any other risk scores or predictors relating to the consumer." 15 U.S.C. § 1681g(a)(1)(B).

[59] ECF No. 10 at ¶ 113.

[60] *Id.* at ¶ 115 & n.41.

[61] *Id.* at ¶ 115 & n.42 (citing *Nichols v. Experian*, No. 2:17-cv-2337, at ECF No. 51-4, pp. 29–31 (D. Nev. Sept. 4, 2018)).

Experian can request a Bullseye report, which will only contain trade data reported by the furnisher."[62]  Experian stated in response to another interrogatory, which Calvillo also pleads as factual support for this claim,[63] that it "does not require a subscriber to identify a permissible purpose each time it accesses a Bullseye report, because each subscriber only has access to *its own reported data*."[64]  Experian concluded its interrogatory response by explaining that a "Bullseye report is a data verification tool that provides Experian subscribers with an efficient method to view and verify their own previously reported data for a particular consumer."[65]

Calvillo's allegations thus show that, by providing a Bullseye report, Experian is allowing an information furnisher to review its own data that it has provided to Experian about a consumer.  Calvillo does not contend that a furnisher's review of the information that it has supplied a consumer reporting agency is an impermissible use of that information under the FCRA.  The viability of any such claim is dubious considering that the FCRA imposes duties on information furnishers to report only accurate information and correct and update the information that they report.[66]  By essentially pleading Experian's own statements about the Bullseye report as the facts supporting her claim that Experian did not disclose that it allowed Calvillo's information to be used for purposes that are not permissible under the FCRA, Calvillo has pled herself out of that claim.  Because it is wholly speculative and futile, even under her own allegations, Calvillo's claim that Experian violated § 1681g(a)(1) by failing to disclose that her

---

[62] *Nichols*, No. 2:17-cv-2337, at ECF No. 51-4, p. 29.

[63] ECF No. 10 at ¶ 115, n.42.

[64] *Nichols*, No. 2:17-cv-2337, at ECF No. 51-4, p. 31.

[65] *Id.*

[66] 15 U.S.C. §§ 1681s-2(a)(1)(A), (a)(2)(A)–(B).

information would be made available for not-permissible purposes is dismissed with prejudice and without leave to amend.

### iii.     Soft inquiries

Calvillo contends that Experian violated § 1681g(a)(1) when it failed to disclose "in plain English" "when any soft inquiry was made" and "why each soft inquiry" was made.[67]  Experian convincingly argues in its dismissal motion that Calvillo does not allege that Experian has furnished information like soft inquiries on a consumer report or plans to do so in the future, and other courts have acknowledged that Experian simply does not share soft inquiries with third parties.[68]  Calvillo alleges that soft inquiries are "purportedly" shared only with the consumer and she pleads no facts to show otherwise.[69]  Calvillo's claim that Experian violated § 1681g(a)(1) by failing to disclose when and why each soft inquiry was made is dismissed without prejudice and with leave to amend if she can plead true facts to plausibly show that Experian has furnished soft inquiries on a consumer report or plans to do so in the future.

### iv.     Included-in-bankruptcy date

Calvillo contends that Experian violated § 1681g(a)(1) and NRS § 598C.130(1) when it stated on the 2017 Document that her debt to Bank of the West was "'included' in her Chapter 13 bankruptcy on August 12, 2016, which was *after* the date of [her] Chapter 13 bankruptcy discharge."[70]  Calvillo contends that this item of information is unclear and inaccurate because it infers that her debt didn't receive the benefit of her July 15, 2016, bankruptcy discharge.[71]

---

[67] ECF No. 10 at ¶¶ 110–11.

[68] ECF No. 12 at 21–22.

[69] *Compare* ECF No. 10 at ¶ 106, *with id.* at ¶¶ 107–111.

[70] *Id.* at ¶ 65.

[71] *Id.* at ¶¶ 67–68.

Calvillo's allegation that Experian disclosed factually incorrect information misses the mark.[72] Section 1681g(a)(1) requires consumer reporting agencies to provide a clear and accurate disclosure of all information in the consumer's file, not a clear disclosure of only the accurate information in the file.[73] So, to the extent that Calvillo seeks to hold Experian liable under § 1681g(a)(1) for disclosing any factually incorrect information that is in her consumer's file, she does not allege a colorable claim under this statute.

What remains of Calvillo's claim is her allegation that the included-in-bankruptcy date is an unclear item of information. She alleges that Experian "correctly" stated on the same document that her Chapter 13 bankruptcy was "'discharged[ ]' and resolved in July 2016."[74] The document also states that Calvillo's debt to Bank of the West has a "recent balance" of "$0 as of Aug 2016[,]" a "status" of "discharged through Bankruptcy Chapter 13" and that "[t]his account is scheduled to continue on record until Jul 2023."[75] Calvillo alleges that she was able to compare all of the information stated on the 2017 Document about this debt with her own knowledge and conclude that the included-in-bankruptcy date was factually wrong.[76] The Seventh Circuit explained in *Gillespie v. Equifax Information Services, LLC* that "a primary purpose[ ] of the statutory scheme provided by the disclosure in § 1681g(a)(1) is to allow consumers to identify inaccurate information in their credit files and correct this information via

---

[72] Calvillo does not content that Experian's disclosure was inaccurate in the sense that Bank of the West had reported something different to Experian, i.e., that Experian gave her an inaccurate picture of what was in its file.

[73] 15 U.S.C. § 1681g(a)(1) (consumer reporting agencies must "clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request").

[74] ECF No. 10 at ¶ 65.

[75] ECF No. 12-2 at 5.

[76] ECF No. 10 at ¶ 65.

the grievance procedure established in § 1681i."[77]  Calvillo expressly contends that Experian's

disclosure allowed her to identify inaccurate information in her credit file, so she cannot state a

colorable claim that it was unclear or incomprehensible.  Because it is futile under her own

allegations, Calvillo's claim that Experian violated § 1681g(a)(1) and NRS § 598C.130(1) by

disclosing that her Bank of the West debt was included in bankruptcy after the date of her

bankruptcy discharge is dismissed with prejudice and without leave to amend.

### v.    *Account-history data*

Calvillo contends that Experian violated § 1681g(a)(1) when it failed to disclose plain-

English descriptions for the payment-received dates listed in the account-history tables for three

of her accounts.[78]  This claim pertains to both the 2017 Document and the 2018 Document.[79]

Calvillo alleges that "Experian lists a three letter code signifying the month that the event

occurred, followed by a two digit code—without specifying whether the digits pertain to the

month or the year the payment was received."[80]  She contends that this "confusing" information

was furnished for her accounts with Comenity Bank/Burkesol, Comenity/CapitalBank/Big Lots,

and Nationstar.[81]

Experian argues that the information disclosed is clear and comprehensible as a matter of

law, but it misconstrues Calvillo's allegations as pertaining to the information provided in the

---

[77] *Gillespie v. Equifax Info. Servs., LLC*, 484 F.3d 938, 941 (7th Cir. 2007) (*Gillespie II*); *accord Ramirez*, 2020 WL946973, at *14 (explaining that the FCRA's disclosure requirements protect consumers' concrete interests "in being able to monitor their credit reports and promptly correct inaccuracies").

[78] ECF No. 10 at ¶¶ 101–05.

[79] *Id.* at ¶¶ 101–02.

[80] *Id.* at ¶ 102.

[81] *Id.*

payment-history table when, in reality, they concern the information provided in the ***account***-history table.[82]  Experian's argument prevails but not for the reasons it cites.

To make matters clear, below is screenshot of the account-history table for the first Nationstar account listed on the 2017 Document.[83]  The colored rectangle notations are my own. The red rectangle contains the information that Calvillo contends is confusing—the line that provides "DPR" or "[d]ate payment received" data.  But when all of the information in the table is viewed together, as intended with a table format, it is clear that the two-digit numerals in the red rectangle identify the days that Nationstar received Calvillo's payment, i.e., "Dec17" is December 17th and "Feb25" is February 25th.  Though similarly formatted, it is also clear that the two-digit numerals listed in the green rectangle identify the year when the information listed in the column below was reported, i.e., "Jan17" is January 2017 and "Feb16" is February 2016.[84]



So, focusing on the information in the first column—the first blue rectangle—the table provides that Nationstar reported in January 2017 ("Jan17"): an account balance ("AB") of "261,005"; date payment received as December 17, 2016 ("Dec17"); scheduled payment amount ("SPA") of "800"; and actual payment amount ("AAP") of "800."  Focusing on the information in the ninth column—the second blue rectangle—the table provides that Nationstar reported in

---

[82] *Compare* ECF No. 12 at 18, *with* ECF No. 10 at ¶¶ 101–02.

[83] *See* ECF No. 12-2 at 8 (rectangles added).

[84] The bolded font used for the data listed in the green rectangle indicates that it is a heading.

February 2016 ("Feb16"): an account balance of "263,564"; date payment received as February 25, 2016; scheduled payment amount of "718"; and actual payment amount of "1,366."

The account-history table for the second Nationstar account listed on the 2017 Document contains an identical format and similar information.[85] There is no account-history table on the 2017 Document for Calvillo's Comenity/CapitalBank/Big Lots account.[86] Calvillo's Comenity Bank/Burkesol account does not appear on the 2017 Document at all.[87] That account, however, appears on the 2018 Document and its account-history table shows the same information as the 2017 Document also in table format.[88] The same is true of the account-history table for Calvillo's Comenity/CapitalBank/Big Lots account on the 2018 Document.[89] None of Calvillo's Nationstar accounts appear on the 2018 Document.[90]

Construing the facts in the light most favorable to Calvillo and drawing all inferences in her favor, I cannot conclude that she has shown that it is plausible that the account-history tables and their notations are not "clear and comprehensible to the average consumer."[91] Calvillo's claim that Experian violated § 1681g(a)(1) by not disclosing plain-English descriptions of the notations in the account-history table is dismissed with prejudice and without leave to amend.

. . .

. . .

---

[85] *See* ECF No. 12-2 at 12.

[86] *Id.* at 11.

[87] *See generally* ECF No. 12-2.

[88] *See* ECF No. 12-3 at 7 (containing horizontal grid lines and discussion of what Calvillo's high balance was during two different spans of time that are noted in the table itself).

[89] *See id.*

[90] *See generally* ECF No. 12-3.

[91] *Shaw*, 891 F.3d at 760.

### vi.     Positive-payment data

Calvillo contends that Experian stated on the 2016 Document that her Nationstar account had a recent balance of $261,954 and a monthly payment of $804 but did not report any of the payments that she made under her Chapter 13 plan.[92]  She claims that Experian violated § 1681g(a)(1) when it failed to disclose her positive-payment data on the 2016 Document.[93] Experian does not move to dismiss this claim, so Calvillo may proceed on it for now.

### b.     Procurers of consumer reports

Calvillo alternatively alleges that, if it is determined that Experian does not "store" her behavioral data itself, then it violated § 1681g(a)(3)'s and NRS § 598C.130(2)(b)'s requirements that it disclose the identity of all persons who procured her consumer report, because the documents it provided her did not include any soft inquiries corresponding with the transmission of her behavioral data to any third party.[94]  Experian moves in a footnote to dismiss these alternative claims on several grounds.[95]  I understand these claims to alternatively allege that Experian collected Calvillo's behavioral data but did not store it; rather, Experian transmitted that data to a third party like Experian Marketing.  The transmission of data from Experian to a third party would be a soft inquiry.  With this understanding and for the reasons discussed above in section I(C)(1)(a)(iii), I dismiss Calvillo's alternative claims without prejudice and with leave to amend if she can plead true facts to plausibly show that Experian has furnished soft-inquiry information on a consumer report or plans to do so in the future.

---

[92] ECF No. 10 at ¶¶ 33–34.

[93] *Id.* at ¶ 47.

[94] *Id.* at ¶¶ 127–29.

[95] ECF No. 12 at 21 n.9.

## 2. *Failure-to-use-reasonable-procedures claims under FCRA § 1681e(b)*

Calvillo alleges that Experian violated its duty under § 1681e(b) to use reasonable procedures to assure the maximum possible accuracy of information contained in consumer reports when it (1) reported that her Bank of the West account was included in bankruptcy after the date of her bankruptcy discharge and (2) failed to report the timely and full payments that she allegedly made on her Nationstar account under the terms of her Chapter 13 bankruptcy plan.[96] Experian argues that these claims fail because neither is an inaccuracy under the FCRA and Calvillo has not plausibly alleged that these items were furnished or suppressed on a consumer report on her.[97]

I begin with whether this information has been or is at risk of being furnished on a consumer report. Calvillo contends that the included-in-bankruptcy information was stated on the 2017 Document,[98] and she has plausibly alleged that that document is a consumer report that Experian sent her under § 1681i(a)(6)(B)(ii).[99] Calvillo contends that the payment-history data was suppressed on the 2016 Document,[100] but she has not plausibly alleged that document is a consumer report. Rather, she contends that document is a disclosure that Experian provided her under § 1681g.[101] Calvillo's claim based on the allegedly suppressed positive-payment data falters at this step, so I do not consider it further.

---

[96] ECF No. 10 at ¶¶ 27, 46, 95–99.

[97] ECF No. 12 at 4–8.

[98] ECF No. 10 at ¶¶ 61–65.

[99] *Id.* at ¶ 31.

[100] *Id.* at ¶ 33.

[101] *Id.* at ¶ 31. I am not persuaded by Calvillo's theory that everything in her consumer's file is at risk of dissemination to third parties simply because Experian's procedures and the FCRA permit consumers to direct consumer reporting agencies to send a post-reinvestigation consumer report to third parties. *See, e.g., id.* at ¶¶ 10–11, 69. The main stumbling block in Calvillo's

The next question is whether Calvillo has plausibly alleged an actual inaccuracy for the FCRA's purposes. Indeed, to sustain a claim under either § 1681e or § 1681i, "a consumer must first make a prima facie showing of inaccurate reporting by the CRA."[102] Information is inaccurate for purposes of these statutes if it is either "patently incorrect or is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions."[103] Patently incorrect means, "at the very least, information that is inaccurate on its face . . . ."[104]

Calvillo has plausibly alleged that a post-discharge included-in-bankruptcy date is inaccurate for the FCRA's purposes because it is patently wrong. She alleges that the legal status of her debt changed when her Chapter 13 plan was confirmed and again when she was discharged from bankruptcy, not later as Experian's report implies.[105] Calvillo may therefore proceed on her claim that Experian violated § 1681e(b) when it reported on the 2017 Document that her Bank of the West account was included in bankruptcy after the date of her discharge. But Calvillo's claim that Experian violated § 1681e(b) by suppressing positive-payment data for her Nationstar account on the 2016 Document is dismissed without prejudice and with leave to amend if she can plead true facts to show that Experian suppressed that information on a consumer report on her.

. . .

. . .

---

theory is the fact that what Experian would be furnishing to a third party is the consumer's dispute about an item of information in her file and the results of the reinvestigation of that dispute, not the disputed item of information itself devoid of any explanation or context.

[102] *Shaw*, 891 F.3d at 756 (quotations omitted).

[103] *Id.* (quotation omitted).

[104] *Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1108 (9th Cir. 2012) (quotation omitted).

[105] ECF No. 10 at ¶¶ 16–18.

### 3.    Failure-to-reinvestigate claim under FCRA § 1681i

Calvillo alleges that Experian violated its duty under § 1681i to conduct a reasonable reinvestigation after she disputed its conduct of suppressing the positive-payment data for her Nationstar account.[106]  An actual inaccuracy is an element of Calvillo's prima facie case under § 1681i.[107]  The inaccuracy she alleges is that Experian simply deleted the account from her credit file—rather than reporting its full details—after she disputed that Experian was suppressing the positive-payment data but not the recent-balance and recent-payment amounts.[108]  To show that deleting this account was so misleading that it could be expected to negatively affect credit decisions, Calvillo pleads facts to show that payment history comprises a large piece of credit scores and creditworthiness.[109]  She also argues that, under the FCRA, Experian could delete this account only if its reinvestigation proved it to be inaccurate, incomplete, or unverifiable.[110]  Although thin, Calvillo has plausibly alleged that deleting this account instead of reporting its full details was misleading and could be expected to negatively affect credit decisions.  Calvillo may therefore proceed on her claim under § 1681i.

### 4.    Fraud claims under NRS Chapter 598

For her final claim, Calvillo contends in four conclusory sentences spread over two paragraphs that Experian violated NRS §§ 598.0915(5) and 598.0923(3) when it sold her data for purposes that are not permissible under the FCRA and misrepresented that her data would be

---

[106] Id. at ¶¶ 33–45.

[107] Carvalho v. Equifax Info. Srvs., LLC, 629 F.3d 876, 890 (9th Cir. 2010).

[108] ECF No. 10 at ¶ 41.

[109] Id. at ¶¶ 51–54.

[110] ECF No. 24 at 9 (citing 15 U.S.C. § 1681i(a)(5)(A)).

used for purposes that are permissible under that Act only.[111]  These claims fail for the reasons that Experian proffers in its dismissal motion[112] and also because Calvillo has effectively pled herself out of a viable claim that Experian failed to disclose that her information would be made available for purposes that are not permissible under the FCRA.[113]  Thus, Calvillo's claims under NRS Chapter 598 are dismissed with prejudice and without leave to amend.

### 5.   *Willfulness and actual-damage allegations*

Calvillo contends that Experian's violations were either willful or negligent,[114] and she pleads that she "suffered actual damages, including . . . out-of-pocket expenses in the form of list time and transportation expenses, as well as stress, anxiety, fear, and frustration, which she believes have exacerbated her existing medical conditions."[115]  She also vaguely alleges that her creditworthiness has been damaged.[116]  Experian argues that Calvillo's willfulness allegations are not sufficiently pled, her time-lost damage is not recoverable as a matter of law, and her emotional-distress allegations are legally deficient without pleading that her consumer report was sent to a third party.[117]  I address these arguments only in the context of Calvillo's three claims that I have determined she may proceed on, because I have dismissed all of her other claims. Those claims are (1) under § 1681g(a)(1) alleging that Experian failed to disclose positive-payment data for her Nationstar account, (2) under § 1681e(b) alleging that Experian failed to

---

[111] ECF No. 10 at ¶¶ 116–17.

[112] *See* ECF No. 12 at 23.

[113] *See* discussion *supra* at section I(C)(1)(a)(ii).

[114] *See, e.g.*, ECF No. 10 at ¶¶ 49, 94–95, 99, 130, 132, 137.

[115] *Id.* at ¶¶ 50, 134.

[116] *Id.* at ¶ 51.

[117] ECF No. 12 at 23–25.

ensure accuracy of information about her Bank of the West account on the 2017 Document, and (3) under § 1681i alleging that Experian failed to reasonably reinvestigate after she disputed its conduct of suppressing positive-payment data for her Nationstar account.

### a. *Willfulness allegations*

A willful violation of the FCRA concerns acts that are done knowingly or in reckless disregard for the FCRA's requirements.[118] "[W]illfulness reaches actions taken in 'reckless disregard of statutory duty,' in addition to actions 'known to violate the Act.'"[119] "A party does not act in reckless disregard of the FCRA 'unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.'"[120] "Conditions of a person's mind may be alleged generally" at the pleading stage.[121] For a willful violation, a plaintiff may recover punitive damages, reasonable costs and fees, and either actual or statutory damages.[122] For a negligent violation, however, a plaintiff may recover only actual damages and reasonable costs and fees.[123]

Calvillo alleges that Experian's conduct was willful because it "knows the types of credit information [that] it offers to third parties; knows the sources of its information; knows how it stores . . . data or, alternatively, the persons who have accessed th[e] data; and has complete

---

[118] *Safeco Ins. Co. of Am. v. Geico Gen. Ins. Co.*, 551 U.S. 47, 56–60 (2007).

[119] *Syed v. M-I, LLC*, 853 F.3d 492, 503 (9th Cir. 2017) (quoting *Safeco*, 551 U.S. at 56–57).

[120] *Id.* (quoting *Safeco*, 551 U.S. at 69).

[121] Fed. R. Civ. P. 9(b).

[122] 15 U.S.C. § 1681n.

[123] *Id.* at § 1681o.

control over the format and presentation of its consumer disclosures."[124]  These vague offerings are not sufficient to state a claim of willful or reckless violation.  Calvillo does allege, however, at least for her included-in-bankruptcy-date claim, that Experian "disregarded industry guidance, its own consent agreements, and its own practices" and "disregarded other information available to it from either its own data furnishers or the public bankruptcy records."[125]  Calvillo has sufficiently alleged that Experian willfully violated § 1681e(b) by failing to ensure accuracy of the information it furnished about her Bank of the West account on the 2017 Document.  She has not, however, plausibly alleged that Experian's other two violations were willful.  But it is not yet clear that she cannot do so.  Thus, I grant Calvillo leave to amend to her willfulness allegations as to those claims.

### b.  *Actual-damage allegations*

The Ninth Circuit has recognized that actual damages can include "recovery for emotional distress and humiliation."[126]  Experian argues that Calvillo has not plausibly shown that she is entitled to damages for her emotional suffering because she fails to allege that any third party actually accessed her consumer report.[127]  Experian is mistaken as Calvillo expressly contends that the 2017 Document and 2018 Document show "that numerous entities had accessed [her] credit information[,] . . . [i]n particular, the [2017 Document] show[s] the presence of one 'hard' inquiry and twenty-seven 'soft' inquiries" and the 2018 Document shows "one 'hard' inquiry and forty 'soft' inquiries."[128]  This alleged damage is sufficiently pled.

---

[124] ECF No. 10 at ¶¶ 130, 132.

[125] *Id.* at ¶ 94.

[126] *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

[127] ECF No. 12 at 24.

[128] ECF No. 10 at ¶ 32.

Calvillo also contends that she was harmed because she "lost time" addressing Experian's FCRA violations. This alleged harm fails because it is vague and unsupported by any factual allegations. It also fails because Calvillo provides no authority to support her contention that this harm is compensable under the FCRA. The Ninth Circuit has recognized that lost wages from time spent dealing with credit problems is recoverable under the FCRA.[129] But Calvillo pleads none of these facts. Her lost-time allegation is therefore dismissed without prejudice and with leave to amend if she can plead true facts to remedy this deficiency.[130]

## II. Motion to stay discovery [ECF No. 18]

Experian moves to stay discovery pending a ruling on its motion to dismiss Calvillo's claims.[131] I have considered the merits of Experian's dismissal motion and determined that five of Calvillo's claims must be dismissed with prejudice and without leave to amend. But I also determined that Calvillo may proceed on a few of her claims and I granted her leave to amend a handful of other claims. Because I have decided the merits of Experian's dismissal motion and found that Calvillo may proceed on a few of her claims, I deny Experian's motion to stay discovery.

. . .

. . .

---

[129] *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1173–74 (9th Cir. 2009).

[130] In determining the issues raised in Experian's dismissal motion, I considered the Ninth Circuit's recent decision in *Ramirez v. TransUnion, LLC*—the "new, controlling authority" that Calvillo moves to supplement the record with. ECF No. 63 at 2 (citing *Ramirez v. TransUnion, LLC*, — F.3d —, 2020 WL 946973 (9th Cir. Feb. 27, 2020)). There is some overlap between Calvillo's claims and the claims alleged in *Ramirez*, but the facts in *Ramirez* are so materially distinguishable from the facts alleged here that the Ninth Circuit's ultimate holdings in that case are not of much use to Calvillo.

[131] ECF No. 18.

**III.     Motion for a protective order [ECF No. 19]**

Finally, Experian moves for a protective order prohibiting Calvillo from seeking any discovery pending a ruling on its motion to stay discovery until the court determines its dismissal motion.[132]  Because I have now resolved the issues raised in Experian's dismissal motion and denied its motion to stay discovery pending that determination, I deny as moot its motion for a protective order pending a ruling on its motion to stay discovery.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that Experian's motion to dismiss Calvillo's amended claims **[ECF No. 12] is GRANTED in part**:

- Calvillo's claims under 15 U.S.C. § 1681g(a)(1), alleging that Experian failed to disclose behavioral and soft-inquiry data, are dismissed without prejudice and with leave to amend;

- Calvillo's claims under 15 U.S.C. § 1681g(a)(1), alleging that Experian failed to disclose impermissible-use, included-in-bankruptcy, and account-history data, are dismissed with prejudice and without leave to amend;

- Calvillo may proceed on her claim under 15 U.S.C. § 1681g(a)(1) alleging that Experian failed to disclose positive-payment data for her Nationstar account;

- Calvillo's claims under 15 U.S.C. § 1681g(a)(3) and NRS 598C.130, alleging that Experian failed to disclose the identity of all persons who procured her consumer report, are dismissed without prejudice and with leave to amend;

- Calvillo may proceed on her claim under 15 U.S.C. § 1681e(b) alleging that Experian failed to use reasonable procedures to ensure the accuracy of information when it

---

[132] ECF No. 19.

26

reported on the 2017 Document that her Bank of the West account was included in bankruptcy after the date of her discharge;

- Calvillo's claim under 15 U.S.C. § 1681e(b), alleging that Experian failed to use reasonable procedures to ensure the accuracy of information when it suppressed positive-payment data for her Nationstar account, is dismissed without prejudice and with leave to amend;

- Calvillo may proceed on her claim under 15 U.S.C. § 1681i alleging that Experian failed to conduct a reasonable reinvestigation after she disputed its conduct of suppressing positive-payment data for her Nationstar account;

- Calvillo's claims under NRS Chapters 598 and 41 are dismissed with prejudice and without leave to amend; and

- Calvillo's willfulness and actual-damage allegations are dismissed without prejudice in part and with leave to amend.

Experian's dismissal motion is **DENIED** in all other respects.

IT IS FURTHER ORDERED that Calvillo has until **April 13, 2020**, to file her second-amended complaint curing the deficiencies outlined in this order. If Calvillo fails to timely amend her pleading, this case will proceed only on her claims (1) under § 1681g(a)(1) alleging that Experian negligently failed to disclose positive-payment data for her Nationstar account, (2) under § 1681e(b) alleging that Experian willfully or negligently failed to ensure accuracy of information about her Bank of the West account on the 2017 Document, and (3) under § 1681i alleging that Experian negligently failed to reinvestigate her positive-payment dispute.

IT IS FURTHER ORDERED that Experian's motion to stay discovery **[ECF No. 18] is DENIED**.

IT IS FURTHER ORDERED that Experian's motion for a protective order **[ECF No. 19] is DENIED as moot**.

IT IS FURTHER ORDERED THAT Calvillo's motion for leave to submit new authority without further briefing **[ECF Nos. 45, 46 (corrected image)] is GRANTED**.

_____
U.S. District Judge Jennifer A. Dorsey
March 23, 2020